Brooke, J.
I concur with my brethren in the affirmance of the decree in this case, and with my brother Allen, in his able statement of the case. But I differ with him in the consideration he has given to the agreement by one of the Millers and Richard Adams. I think there is evidence in the record, that that agreement was abandoned by the parties to it. It was a conditional lease, and the substance of it was, that when Adams should shew a title to the property, of prior obligation to the title of Collin, under whom the Millers had a lease, and to whom they paid rent, that then they were to hold under Adams, and pay the rent to him. Collin had been in possession of the premises, claiming under Coleman and -wife, who claimed under Storrs, who claimed under a deed from Byrd’s trustees, executed in the year 1774; and these parties had been in possession of the land in question, from that time to the date of the lease from Adams. But one of the Millers signed that lease, though they were the joint lessees of Collin. From 1806 to the commencement of this suit, the rent was paid to Collin ; and we hear not a breath of the agreement until both parts of it were found in 1833, among the papers of the Millers in the possession of Andrews, who had been their clerk ; found long after the sale of the property by the trustees of the Millers to the present holders.
It is true that Carrington, the personal representative of Adams, claimed the property at that sale ; but he produced no deed or title to it, and his claim was not regarded by the purchasers.
The excuse assigned for this delay in asserting the title, is the pending suit with Byrd’s trustees and the Corporation of Richmond. But there is nothing in the record to shew that that suit involved any question in *256 relation to the land in dispute in this case, so as to delay the claim of Adams under the agreement of 1814. That suit was compromised in 1833, and from 1833, when the agreement was found in the possession of Andrews, no suit was brought until 1835. I think it was because Adams had abandoned the agreement when it was given up to the Millers. His reasons for abandoning the agreement may have been because the other Miller would not execute it; or because he could not perform the condition by shewing a title to the land prior in obligation to the title of Collin. I think that for one or both of these reasons, he abandoned the agreement when he surrendered it to the Millers.
The agreement admits that the Millers were in possession under Collin, who, and those under whom he held, had been in possession of the premises from the date of the deed in 1774 from Byrd’s trustees. I think they were in adverse possession from that time; and whatever was the title of Adams, it was lost by the act of limitations; and I think the bill for the specific execution of the agreement ought to be dismissed.
But the counsel for the plaintiffs, abandoning the agreement, have set up another claim to the land in question. Adams held the land on the east bank of Shockoe creek, and Collin and the Millers under him, held on the west bank of the creek. Each claimed the creek as his boundary; and it is insisted that the building of the stone bridge above, by the Corporation of Richmond, changed the course of the creek, and threw it to the east; and that this change was by avulsion.
For the purchasers under the Millers’ deed of trust, it was insisted, that if the channel of the creek was changed, it was by alluvion ; and there has been a great waste of authorities on the point. But I think if the creek has been changed, which is very doubtful on the testimony, if it was changed by the building of either of the bridges erected by the Corporation of Richmond, *257 it neither changed by avulsion or alluvion. If it was changed by the building of either of the bridges, and Adams was injured by it, he had a plain remedy by an action at law against the corporation for damages. The Millers held the land on the west side of the creek, and ' were entitled to the land left on that side by the change of the creek by the building of the bridges or either of them.
Decree dismissing the bill affirmed.